UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| VS. | § | CRIMINAL ACTION NO. 2:14-CR-150 |
| | § | |
| IRENE YVETTE MOLINA | § | |

### ORDER DENYING MOTION TO SUPPRESS EVIDENCE

Before the Court is Defendant's motion to suppress evidence. D.E. 14. The Defendant is charged by indictment with the offense of possession with the intent to distribute heroin. The heroin was discovered and a subsequent confession was obtained as a result of an immigration inspection of a commercial bus at a border patrol checkpoint in Falfurrias, Texas. The issue is whether Border Patrol Agent Daniel Tista (Agent Tista) acted outside of the parameters of the Fourth Amendment when he asked Defendant to unzip her jacket and lean forward in an effort to determine if she was transporting illegal drugs. For the reasons set out below, the motion is **DENIED**.

### FACTS

On February 9, 2014, Defendant was a passenger on a commercial bus. When the bus arrived at the Falfurrias, Texas border patrol checkpoint, Agent Tista and another agent conducted an immigration inspection of the passengers on board. At the suppression hearing held on April 23, 2014, Agent Tista testified that Defendant was seated towards the front of the bus around the fifth row. She caught his attention because she would not make eye contact and kept staring out of the window with a lost gaze. Agent Tista added that when he was questioning other passengers, Defendant would look

at him but then look away when he lifted his head. Agent Tista also observed that Defendant was hunched over like she had a sore stomach and she was grabbing her waist. Agent Tista testified that this concerned him because he was unsure if she was hiding something or was hurt.

When he reached the Defendant, she sat back. Agent Tista asked her if she was a United States citizen, and she answered in the affirmative. Because of her posture as noted above, Agent Tista asked if she had anything around her waist and Defendant responded that she did not. Agent Tista asked Defendant if she would mind unzipping her jacket because he could see a bulge or something on her stomach. Defendant consented and unzipped her jacket about two or three inches. This failed to expose the area that Agent Tista was concerned about so he asked Defendant if she would mind unzipping the jacket all the way so he could see her waist, and she did so. Agent Tista saw something underneath Defendant's shirt and he asked her to lean forward. She did so, allowing Agent Tista to see something protruding from her back. He did not know what it was.

Agent Tista was concerned about the safety of the officers and the other passengers so he asked Defendant to step off the bus and she complied. He asked her if she would mind being patted down and she consented. He felt something hard in her back which she claimed was a back brace. A female agent was then called to perform a more thorough inspection. The search conducted by Agent Jennifer Jackson resulted in the discovery of heroin. Defendant was placed under arrest and read her rights. She then gave an incriminating statement.

## APPLICABLE LAW

The scope of immigration checkpoint stops "is limited to the justifying programmatic purpose of the stop: determining the citizenship status of the persons passing through the checkpoint." *United States v. Machuca-Barrera*, 261 F.3d 425, 433 (5th Cir. 2001). "The permissible duration of an immigration checkpoint stop is therefore the time reasonably necessary to determine the citizenship status of the persons stopped." *Id.* "This would include the time necessary to ascertain the number and identity of the occupants of the vehicle, inquire about citizenship status, request identification or other proof of citizenship, and request consent to extend the detention." *Id.* A brief stop at a border patrol checkpoint that lasts no longer than necessary to fulfill its immigration-related purpose does not violate the Fourth Amendment. *Id.* at 429.

"If the initial, routine questioning generates reasonable suspicion of other criminal activity, the stop may be lengthened to accommodate its new justification." *Id.* at 434. "Thus, an agent at an immigration stop may investigate non-immigration matters beyond the permissible length of the immigration stop if and only if the initial, lawful stop creates reasonable suspicion warranting further investigation." *Id.* Where no reasonable suspicion warranting further investigation exists, it is unlawful to prolong the detention of a passenger on a bus beyond the time necessary to accomplish the primary purpose and legal justification for the checkpoint. *United States v. Portillo-Aguirre*, 311 F.3d 647, 655 (5th Cir. 2002). Even when a defendant consents to a search, that consent may be invalid if it was given while she was under an illegal detention and no circumstances

intervened between the detention and consent. *United States v. Jaime*, 473 F.3d 178, 182 (5th Cir. 2006).

## DISCUSSION

Defendant has asserted two bases for her motion to suppress. First, Defendant urges that Agent Tista's commands to Defendant regarding unzipping her jacket and leaning forward constituted manipulation of Defendant's body which made apparent any protrusions or anomalies that would not have been observable absent the agent's commands. D.E. 14, p. 3. Alternatively, Defendant argues that the heroin and any statements she gave should be suppressed because Defendant's detention exceeded its permissible length. D.E. 14, p. 5. As a result, Defendant seeks to suppress all evidence, arguing that it was obtained under the "fruit of the poisonous tree" principle. D.E. 14, p. 5.

The Fifth Circuit's analysis in *Machuca-Barrera* controls the disposition of this case. In *Machuca-Barrera*, the defendant drove his car to an immigration checkpoint where he was questioned by a border patrol agent about his travel plans and citizenship. The defendant responded that he was a United States citizen residing in Pecos, Texas, and was returning from a trip to Mexico. At this point, the agent asked the defendant if he was carrying any firearms or drugs, and the defendant replied that he was not. The agent requested consent to search the car, which the defendant gave. Upon searching the car, marijuana was discovered hidden inside of a speaker box. *Machuca-Barrera*, 261 F.3d at 429-30.

In affirming the district court's denial of the defendant's motion to suppress the evidence of marijuana, the Fifth Circuit held that "because the brief stop . . . lasted no longer than necessary to fulfill its immigration-related purpose, the stop did not violate the Fourth Amendment." *Id*. at 429. The Court considered only the time "up to the point at which [the defendant] consented to a search . . . because "[a]fter [the defendant] consented to a search, [the agent] needed no justification to prolong the encounter." *Id*. at 435. The Court noted that the agent's questioning of the defendant for no more than a couple of minutes was within the permissible duration of an immigration checkpoint stop. *Id.* at 435.

Similarly, in this case, when Agent Tista reached the Defendant, he confirmed her status as a United States citizen. Then, just like the agent in *Machuca-Barrera*, Agent Tista immediately began to inquire about non-immigration related matters—namely whether Defendant was concealing something around her waist. There is no indication, based on the facts in the record and the testimony at the suppression hearing, that Agent Tista questioned Defendant for more than a couple of minutes before she consented to unzip her jacket. The Court finds that Defendant consented to a search when she agreed to unzip her jacket and to lean forward. Because the questions concerning Defendant's immigration status and whether she was carrying something around her waist occurred within the permissible duration of an immigration checkpoint stop, there is no basis for the argument that the consent given by Defendant was invalidated because she was under an illegal detention.

In addition, *Machuca-Barrera* makes clear that when the initial, routine questioning generates reasonable suspicion of other (that is, non-immigration related) criminal activity that warrants further investigation, the stop may be lengthened to accommodate its new justification—allowing a border patrol agent to investigate non-immigration matters beyond the permissible length of the immigration stop. The Court finds that Agent Tista's testimony clearly established the reasonable suspicion necessary to question Defendant about non-immigration matters beyond the permissible length of the immigration stop.

First, Agent Tista's suspicions were triggered because of what he perceived as a purposeful effort by Defendant to avoid making eye contact with him. Second, Agent Tista observed that Defendant was hunched over and grabbing her waist. Agent Tista testified that, based on his professional training and experience, this indicated that Defendant might be hiding something. Finally, upon reaching Defendant and ascertaining her citizenship status, Agent Tista testified that he could see some type of bulge on her stomach. At this point, Defendant's actions had generated a sufficient basis for Agent Tista to form a reasonable suspicion of other criminal activity warranting further investigation. Accordingly, any questioning that may have occurred beyond the permissible length of the immigration stop was lawful.

## CONCLUSION

For the reasons stated above, Defendant Irene Yvette Molina's motion to suppress evidence (D.E. 14) is **DENIED**.

ORDERED this 5th day of May, 2014.

_____
NELVA GONZALES RAMOS
UNITED STATES DISTRICT JUDGE